(No. 25764.-

JOANNA C. GASKIN *vs.* EVA S. SMITH *et al.*—(VELDA MAY DIXON *et al.* Appellants, *vs.* OTIS L. JONES, Trustee, Appellee.)

*Opinion filed December 12, 1940.*

GEORGE N. BLATT, JR., and NORBERT B. TYRRELL, (A. EDMUND PETERSON, of counsel,) for appellants.

SAVAGE & HOLBROOK, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This appeal is from a decree of the circuit court of Will county setting aside a quitclaim deed given by Eva S. Smith and husband to Velda May Dixon, and nullifying the effect of a redemption effected by Velda May Dixon from a foreclosure sale, on the ground that such deed and redemption were fraudulent and void and made to hinder, delay and defraud the creditors of Eva S. Smith.

In 1928, Eva S. Smith and husband mortgaged 120 acres of farm land located in Will county to secure the payment of $11,000, four-elevenths of the indebtedness being held by Joanna C. Gaskin and seven-elevenths by the First National Bank of Joliet, as trustee, under two trusts for the benefit of the Silver Cross Hospital. The mortgagors defaulted and Mrs. Gaskin instituted a foreclosure proceeding. January 11, 1934, a decree of foreclosure was entered which directed the master in chancery to sell the premises and apply the proceeds on the costs and indebtedness. The sale was held March 20, 1934, and Joanna C. Gaskin received a certificate of purchase on her bid of $2500. The sale was approved by the court, and, after the usual deductions of costs, the balance of the sale price was prorated to Mrs. Gaskin and the First National Bank, as trustee. There was a large deficiency and on May 23, 1934, deficiency judgments were entered against Eva S. Smith and husband for the amounts, and to the creditors as follows: To Joanna C. Gaskin $3768.75, and to the First National Bank, as trustee in the two trusts, $3893.22 and $2867.40, respectively. Executions were issued on each of said judgments the date they were entered. The execution on the Gaskin judgment was returned unsatisfied. The record does not disclose a return of the other two but no point is made of it in this case.

March 19, 1934, the day preceding the master's sale, Eva S. Smith and husband executed the deed in controversy, which conveyed the equity of redemption to her daughter,

Velda May Dixon. The deed was filed for record the following day, a few hours preceding the master's sale.

March 5, 1935, Velda May Dixon, as grantee of Eva S. Smith, effected a statutory redemption from the foreclosure sale and paid the full amount necessary to redeem from the Gaskin certificate of purchase. Mrs. Gaskin accepted the money and executed a written approval of this redemption. Mrs. Dixon and her husband, Ralph M. Dixon, borrowed the money, used in the redemption, from a third party, giving a mortgage on the premises here involved to secure its payment. The Dixons paid this mortgage, February 11, 1937.

The same day Mrs. Dixon made the redemption, the First National Bank, as trustee, being released from its duties as such trustee, assigned the two deficiency judgments to appellee, Otis L. Jones, as successor trustee. An execution was issued on both judgments and a levy and sheriff's sale was held under the judgment of $3893.22. Jones, as trustee, bid $2541.07 and, there being no further redemption, received a sheriff's deed. The deed purported to convey all the interest of Eva S. Smith in the premises. The deficiency judgment was credited with the amount of the bid.

May 1, 1935, Joanna C. Gaskin began this action to set aside the deed from Eva S. Smith to Mrs. Dixon. Mrs. Smith, Mrs. Dixon and her husband, Ralph M. Dixon, were made parties defendant. Smith, the husband of Eva S. Smith, had died prior to said date. Jones, as trustee, intervened, and answered Mrs. Gaskin's complaint and filed a cross-complaint. Mrs. Smith and the Dixons answered the complaint and cross-complaint.

The theories upon which the Gaskin complaint and the Jones cross-complaint were drawn were substantially the same, and, since the hearing and decree were upon the cross-complaint, no further reference need be made to the con-

tents of the complaint. The court granted the prayer of the cross-complaint, but the decree entered did not dispose of the complaint of Mrs. Gaskin, neither does it appear that she was served with the notice of appeal and she has filed no brief, but there are statements in the record indicating she and Jones coöperated in the prosecution of the suit made by the cross-complaint and there is sufficient in the record, here, to hold her bound by the conclusions reached on the matters presented on this appeal.

After a hearing, a decree was entered, in accordance with the prayer of the cross-complaint, which ordered Velda May Dixon to pay Jones, as trustee, within ninety days, $2500, and if said payment was not made within the time specified, she and her husband were directed to convey the premises to Jones, as trustee, and in the event of their failure to execute the deed, the master in chancery was to make the conveyance.

Mrs. Smith died during the pendency of the proceeding and her death was suggested of record, but there was no substitution of additional parties.

The Dixons perfected an appeal direct to this court claiming a freehold is involved. A jurisdictional question is presented. The decree found that the advance of any moneys by Mrs. Dixon for redemption purposes was done fraudulently and the moneys deemed to have been paid as a volunteer and that she was not entitled to reimbursement, but the decree further recites that Mrs. Gaskin and Jones had consented that she be given an opportunity "to recoup or to save the benefits therefor as hereinafter set forth." The decree directed Mrs. Dixon to pay Jones, as trustee, $2500 within a specified time or lose her title. It is difficult to comprehend how a payment of $2500 by Mrs. Dixon to Jones would reimburse her for the $2500 she had previously paid as redemption money, all of which went to Mrs. Gaskin. However, the provision for her

paying the $2500 to Jones, or being reimbursed for the money she had paid on the redemption, was not entered in adjudicating any issue in the case. A decision of this court against Mrs. Dixon's interest would result in taking from her whatever title she acquired by the deed, plus the redemption from the foreclosure sale, which would take from her a freehold. To· remove her deed as a cloud on the title of appellee Jones would vest a freehold title in Jones, as trustee. The rule is, a freehold is involved on an appeal where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate. *Swinson* v. *Sodaman,* 369 Ill. 442; *Lennartz* v. *Boddie,* 304 id. 484; *Peterson* v. *Peterson,* 264 id. 121.

Consideration of· a few established rules in reference to the rights of the mortgagees, of Mrs. Gaskin, as holder of the certificate of purchase, and under their respective deficiency judgments, the rights of Eva S. Smith as the owner of the premises prior to the execution of the deed and the rights of Mrs. Dixon as the grantee of Mrs. Smith and as redemptor, will serve to clarify the relationship of the parties to the various transactions and the effect those transactions had upon their respective rights.

Prior to the beginning of the foreclosure action the title of the property was in Mrs. Smith, subject only to the lien of the mortgage and the rights of the mortgagees as set forth in the mortgage. She had the right to convey it subject to the mortgage for any consideration she might elect to accept, and such conveyance could not be fraudulent as to the mortgagees for their interests were protected by their mortgage lien. (*Bradley* v. *Snyder,* 14 Ill. 263.) In *Fetrow* v. *Merriwether,* 53 Ill. 275, in discussing the right of a mortgagor and whether such conveyance could be fraudulent as to the mortgagees, it was said: "And we are unable to perceive in what respect appellant's rights could

be affected. He held as assignee of the mortgagee, and it in nowise concerns him whether the mortgagor held the equity of redemption, or has transferred it to another for a full consideration, or has transferred it gratituously. If the mortgage debt is not paid, and he holds as assignee of the mortgagee, he can foreclose and sell the land. * * * The conveyance of the equity of redemption did not and could not, in the least, prejudice, hinder or delay him in a foreclosure."

The right of Mrs. Smith to transfer and dispose of her interest subject to the mortgage did not change when the foreclosure suit was instituted, for the owner of an equity of redemption has the same estate in the land after the foreclosure sale as before. (*Chicago Land Bank* v. *McCambridge,* 343 Ill. 456; *Williams* v. *Williston,* 315 id. 178.) When the lien of the mortgage had been foreclosed and a sale had, the mortgage had expended its force and the property was no longer subject to its provisions, (*Ogle* v. *Koerner,* 140 Ill. 170; *Seligman* v. *Laubheimer,* 58 id. 124;) nor did it, in any way, affect the result that Mrs. Gaskin, a holder of a part of the secured indebtedness, became the purchaser at the sale. (*Lightcap* v. *Bradley,* 186 Ill. 510.) When she purchased the property at the sale and acquired the certificate of purchase, a new relationship was thereby created which was in no way dependent upon privity of contract between her and the mortgagors. As a holder of the certificate of purchase she had the right to have the property at the end of the period of redemption, in the event no redemption was made. *Lightcap* v. *Bradley, supra.*

After the sale, the equity of redemption was not subject to the deficiency judgment and it made no difference, in this regard, whether the title of the equity of redemption was in Mrs. Smith or her grantee. If Mrs. Smith had continued to hold the equity of redemption and redeemed from the foreclosure sale, then the title of the property, being in her

name, could have been subjected to the payment of the deficiency judgment for the reason she had paid the indebtedness against her property and it was subject to the payment of her debts the same as any other property she might have owned. *Ogle* v. *Koerner, supra.*

By an application of these principles, it is apparent that the facts the Smith-Dixon deed was without consideration and was made to a near relative can not be taken as imputing fraud to the transaction unless the evidence shows the conveyance was made as a part of a general scheme to have the redemption made by Mrs. Dixon in her name but for the benefit of Mrs. Smith.

Ralph M. Dixon and Mrs. Dixon testified that Mrs. Smith told them she was not financially able to redeem the land and that she wanted Mrs. Dixon to have it so that she might make a redemption. It is conceded that Mrs. Smith was insolvent at the time of the execution of the deed. The Dixons furnished the money with which to make the redemption and took possession of the property and cultivated the land. They repaired and improved the buildings and paid the taxes assessed against the property. The only benefit Mrs. Smith derived was the privilege to occupy the dwelling as a residence. Mere right of occupancy of the house would not, in itself, be sufficient to show that Mrs. Dixon and Mrs. Smith were effecting a redemption for the purpose of acquiring the title for Mrs. Smith.

Appellee contends, in this connection, that there was such inadequacy of consideration for the deed that it imputes fraud. It should be noted that the deed was executed, delivered and recorded prior to the foreclosure sale, and that, at that time, the indebtedness secured by the mortgage had been determined by a decree of court. The evidence clearly indicates that at the time when the deed was made the premises were not worth more than one-half of the indebtedness the mortgagees held against it. If the mort-

gagees permitted the land to sell for less than its full value, they can not now be heard to complain of such fact. In *Ogle* v. *Koerner, supra,* it was said: "It is idle for the senior mortgagee to urge that the property redeemed is in fact worth much more than the price for which it was sold at the foreclosure sale. He was a competent bidder at such sale, and therefore had it in his power to bid the property up to its fair cash value, and if he failed to do so, a presumption arises from which he can not escape, that the property sold for what it was reasonably worth. At any rate, the mortgagee under whose decree the mortgaged property is sold, in the absence of all irregularity and unfairness in the sale, must be conclusively held to the price bid, as a full equivalent for and satisfaction of his lien, and having received the proceeds of the sale he becomes a mere stranger to the property."

The First National Bank, as trustee, was a party to the foreclosure suit, and although it did not appear at the sale, and bid, it was chargeable with notice of the sale, and failure to appear and protect its interests, as trustee, placed it in the same position as Mrs. Gaskin, and if it had retained the deficiency judgments it would not be in a position to complain of the inadequacy of the sale price. Appellee Jones, as assignee of the bank, stands in the position of his assignor.

For the reasons stated, the decree of the circuit court of Will county is reversed and the cause remanded, with directions to dismiss the complaint of Joanna C. Gaskin and the cross-complaint of Otis L. Jones, as trustee, for want of equity.

*Reversed and remanded, with directions.*